Yes. Dan Harrelson on behalf of the appellant, Luis Jose Martinez, your honors. This appeal basically has three issues. The issues are whether or not the court properly denied the motion to suppress evidence and denied my client a Franks hearing based upon misstatements that were made by the officer to the judge who issued the search warrant. What's the predicate for requiring a Franks hearing? Well, the predicate would be if there were intentional or reckless statements in disregard of the truth to a judge that would basically take away his discretion to make a knowing decision about whether or not to issue a warrant, and those statements are material and there is insufficient probable cause otherwise. It has to be a misstatement that's willful and material. Yes. Which ones would you point to? Well, the ones that I'm aware of that he made and that he made was that Mr. Martinez was in the San Jose area and that he sold everything, meaning sold the drugs, sold all of the drugs. That was certainly not true, and it was acknowledged that that was not true. Not true that he was in San Jose? Not true that he sold all of the drugs, that the officer had no information. The officer knew that he had no information about my client selling any drugs. Didn't the government consent that the statement was not correct and that what the officer had done had misidentified your client for Mr. Van Tassel and that Mr. Van Tassel had said that he sold everything? Well. So somebody did sort of say the words sold everything, but we've misidentified the speaker there. That is true, but if you look at who we're going to do a search warrant on, it's my client, and if it was misstated and the officer knew it was misstated, and when the judge asked him about whether or not this was a correct statement and he misstated it again and didn't clarify it, I think that shows a willful misstatement of a material fact about whether or not my client sold the quantities of methamphetamine that came from there. Whether or not somebody said it, the officer knew that it wasn't said about my client, and yet he represented to the judge that it was. Do you have any evidence that the officer's misstatement was intentional as opposed to negligent? Well, I think that the evidence that it was intentional is the fact that the judge asked for him to clarify it, and he stated it again. Does that mean that he misremembered it the second time? Well, I don't know how we could go there without going to some type of a hearing to question the officer. In order to find out what's in the officer's head, you would have to have some form of a hearing to question the officer to determine why he made that misstatement and when asked again why he didn't clarify it, why he didn't say that Mr. Van Tassel had said it. Where did the officer get the statement from? He got all of his information, as I understand it, from Mr. Van Tassel, who was the co-conspirator. Was he listening to conversations? I believe he was questioning Mr. Van Tassel when he got information that he used in obtaining the affidavit. So what the officer should have said was Mr. Van Tassel said that Mr. Martinez had sold everything in San Jose as opposed to Mr. Van Tassel said that Martinez said he sold everything in San Jose. Perhaps. And I say that because I don't know exactly what was said because that portion of the tape, I believe, was not a part of the tape recordings of Mr. Van Tassel's statements. So we can't really give it. But we know what was in the affidavit. Yes. Would the way rephrased by Judge Bybee have been accurate? It probably would be accurate, yes. The difference is identifying the speaker. Exactly, yes. One, it's the opinion of Van Tassel. The other, it's a quotation of your client. Yes. Okay. What else? The other statement was that my client spoke openly and freely about how much money was owed and what the property owner would do with the equipment, inferring that it was methamphetamine equipment. And that was also admitted to be an embellishment and an overstatement of what was said. There was a discussion about equipment. There was a discussion about someone else owing money. And then that goes to the third statement that Mr. Van Tassel or that the officer said, based upon tape recordings that he made between my client and Mr. Van Tassel, that my client owed money to Mr. Van Tassel when, in fact, my client said something to the effect that these other people owed money to Mr. Van Tassel. I thought the way it went on the tape was that Van Tassel asked your client about getting paid, and your client responded, I will find someone to pay you, something to that effect. I had to quote that they owed him money, that others owed Mr. Van Tassel money, and the officer represented to the court that my client had said that he owed Mr. Van Tassel the money. Okay. Well, one of the exceptions, of course, in striking the affidavit or a search warrant in a Frank's hearing is that even if these statements were made deliberately and were misleading, the court can still sustain the search warrant if probable cause still remains. And it seems to me that there's a pretty strong affidavit here, and even if you strike these statements that you point to, and the district court followed that, finding that there, nonetheless, there was still probable cause for the search. And I think you have a little bit of a problem with that because there is no question that Van Tassel's identification of the defendant was one of the principal organizers of the methamphetamine operation. And when you read the search warrant in the entirety, I think there's probable cause. Would you comment on that? Well, as I understand it, really all that's left after you strike those statements, if you strike those incorrect statements, is basically a physical description of my client, his name, his phone number, the vehicle description, and then Mr. Van Tassel's statement regarding my client's role in the conspiracy. But other than that, there's no other corroborating evidence, other than Mr. Van Tassel's representations as to what my client may or may not have done. But isn't that enough to establish probable cause? There was absolutely no physical evidence connecting my client to the lab or to the van. Absolutely none. It was all based on Mr. Van Tassel's representations. And Mr. Van Tassel was very inconsistent in his statements between a statement to the officer, his testimony with the grand jury, and then his ultimate testimony at trial. Of course, the judge issuing the search warrant would not have had that information about the grand jury testimony and otherwise. But we have a fairly unreliable reporter in Mr. Van Tassel. And so you could describe anyone and state that they have a role. And, in fact, I think there were statements that Pablo was involved in the conspiracy in the beginning, and later after the deal was made with Mr. Van Tassel, he then stated my client was the person who did acts that he had earlier attributed to Pablo. You're down to under two minutes. Did you want to save some time for rebuttal? It's up to you. It's your time. Well, we're just dealing with the first issue. I would also like to state that there's lack of substantial evidence. If you were to not admit the articles of evidence that were seized at my client's home on the motion in limine, so I'll reserve the rest. Thank you very much, Mr. Harrelson. Ms. Santos? Good morning, Your Honor. Governor Santos representing the United States. May it please the Court, to respond to the defendant's argument regarding the denial of the motion to suppress, the Court has already hinted that the correct standard is that the defendant bears the burden to make a preliminary showing. You know, we just ask questions. We don't – some may take it as a hint, some may not. That's up to counsel. We just ask our questions. Okay. Well, the standard is that the defendant has to make a substantial showing, that the misstatements were deliberately made or recklessly made, and in this case the Court found correctly, the government believes, that in fact the statements were at best negligent, and the circumstances under which those statements were made and then relayed to the magistrate judge are not completely accurate in terms of what the defense counsel just stated. What basically was happening, as the records show, is that the recording was being made, cooperating defendant Mr. Van Tassel was using the cell phone that Detective Barron provided for him. That cell phone was connected to a recorder. The only thing that Mr. – that Detective Barron could hear was Mr. Van Tassel's side of the conversation. The negligence came in the fact that Detective Barron failed to check the recording afterwards and relied on the statements that Mr. Van Tassel gave to him as to this is what happened on the other end of the conversation. So the government conceded that in fact when we listened to the recordings and compared them to the transcripts, the things that we believed were there, according to Mr. Van Tassel's statements, were not there. So the court – the government did concede that that happened, but even then the government was able to show that the statements were, number one, negligent, and number two, even if you excise them from the – from the affidavit, there was still plentiful probable cause. Why not have a Franks hearing? Shouldn't what you've just described have triggered the need for a Franks hearing? Well, the Franks hearing is required only after the defendant has shown. You've got the principal source of the information from the affidavit telling the officer one thing, and when later you check the whole conversation, it turns out that he in part inaccurately reported to the law enforcement officer what the situation was, right? Yes, Your Honor. At least as to two of these. Right. But Franks itself says that allegations of negligence or innocent mistake do not require a Franks hearing. Only when the defendant is able to show something more that these statements were deliberately or recklessly made, then do we go to a Franks hearing to check his veracity. But Franks itself limits those hearings to once the defendant has made that showing, and that showing was not made here. What happened? Didn't that occur when the officer was asked and reiterated? I don't understand. The statement as to the sale of drugs? Didn't what occur? The fact that he did deliberately made the statement? Well, there's a mistake. Right. And then the mistake is repeated and reaffirmed when pressed on examination by the court, right? Well, what happened in this case was an affidavit was submitted explaining the circumstances of the misstatements, and the court found that that was sufficient to show absence of mistake, I mean, absence of deliberate misstatement on the part of the detective. So, therefore, the court was justified in denying the Franks hearing because the defendant failed to meet his burden to show that the statements were deliberately or recklessly made. The government was able to show, and the district court accepted the government's showing that when rebutted by the defendant, that the circumstances of how those recordings were made were at best negligent. And, yes, the detective should have checked before he went to the magistrate. He did not. And he simply relied on the statements from Mr. Van Tassel relaying the other half of the conversation. He shouldn't have done that. But even doing so, the court found that those were not intentional. And, therefore, and even went to the second step, which is even if we were to accept that they were deliberately made, if we excise those statements from the affidavit, there's still abundant probable cause to show, in addition to the name and physical description, the fact that cooperating defendant Van Tassel had the defendant's phone number, knew his vehicle, and was able to trace the date of manufacture, the recordings were otherwise accurately relayed to the court. So, aside from those misstatements, the court knew correctly the other things that had happened in the conversation, meaning that the defendant continued to speak to Mr. Van Tassel, despite the fact that later on he claimed that he didn't have anything to do with it, with this manufacturing operation. But, in reality, the conversation continued over several phone calls, which indicated to the court and later to the jury that the defendant had no participation in the conspiracy. Did Detective Barron have the assistance of legal advice when the affidavit was prepared? This originally came in as a state case. The warrant was obtained to let you start by answering my question. The answer is no. The answer is no. No help. No. Prepared it on his own. Correct. This happened, I think, the case started at midnight. The agents with the task force arrived at 2.30 in the morning at that location, and then the phone calls were made in the morning, and we were not involved in obtaining that search warrant. That search warrant was applied through a state judge telephonically. I was concerned about who it might be. I just wondered whether legal advice was available to Detective Barron when he prepared the affidavit. No, he did not consult with an attorney from our office. Did not consult with an attorney at all? I don't believe that he consulted with any attorney before applying for the search warrant. Okay. Does the Court have any other questions about the other issues? I don't think so. Thank you very much, Ms. Santos, for your argument. Rebuttal? Very briefly, Your Honor. Ms. Santos indicated that the search, not the search, but the arrest occurred on Mr. Van Tassel at night. The phone calls to my client were in the morning, and sometime after that was when the search warrant was sought. By Officer Barron or Detective Barron. My concern is that if we allow this type of conduct by officers to take a statement from a witness, make a recording, and then not consult that recording, and not consult legal advice, there is a liaison that's available to officers, and they can just negligently disregard information that they have or resources that they've recorded, and then this argument is made. It was unintentional. It was negligent. He had the resources to do this right, and to allow him to do it wrong or to allow officers to continually do it wrong and then say, well, that's okay because they didn't do it intentionally, tramples on the rights of defendants. And it goes against all sense of fairness and against the law, against Franks. I mean, I think Franks at that point says, you know, you had the resources, you had the opportunity, and if you did it, quote, negligently, I think there's more there than that. I mean, he had other resources that he could have gone to, and what he did was clearly wrong. A Franks hearing should have been held to determine why this was done, how it was done, and to give any defendant the right to at least rebut that information. Thank you, Mr. Allison. Thank both counsel for their argument. The case just argued will be submitted for decision. We'll proceed to the next argued case on the calendar, which is Rodriguez-Cuevas. Counsel are present if they'd come forward. Ms. Bramble.
judges: Lay, Hawkins, Bybee